FILED
6/28/2022
JN
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

RECEIVED
6/22/2022
RP
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**1:22-CV-3264**

JORGE ALEJANDRO ROJAS,

*Plaintiff,*

vs.

CORDOBA LEGAL GROUP LLC,
NATIONAL DEBT RELIEF LLC,
ALFREDO CORDOBA,
BC CONSULTING GROUP d/b/a
PARALEGAL ASSISTANCE CENTER,
AD HOLDING GROUP FOUNDATION,
OWNER OF 279-247-0137, and,
OWNER OF 424-238-3229,

*Defendants*.

Case No. ______________________

**COMPLAINT FOR DAMAGES**

**JURY TRIAL DEMANDED**

JUDGE GETTLEMAN
MAGISTRATE JUDGE VALDEZ

Plaintiff, Jorge Alejandro Rojas, ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and its implementing regulations, against Defendants Cordoba Legal Group LLC ("Cordoba Legal"), National Debt Relief LLC ("NDR"), Alfredo Cordoba ("Mr. Cordoba"), BC Consulting Group doing business as Paralegal Assistance Center ("BC Consulting"), AD Holding Group Foundation ("AD Holding"), Owner of 279-247-0137 ("Owner 0137"), and Owner of 424-238-3229 ("Owner 3229"), (collectively "Defendants") and alleges based on personal knowledge and information and belief, as follows:

## INTRODUCTION

1. As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019. The

States likewise field a constant barrage of complaints. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits robocalls to cell phones and home phones. *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227, and its implementing regulations, 47 C.F.R § 64.1200.

3. This case involves a campaign by Defendants to obtain business via itself or affiliates making telemarketing calls, despite not having the required consent to do so, to solicit debt relief and debt consolidation services.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over the claims herein under 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendants as it regularly and systemically conducts business in the state of Illinois. The wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Plaintiff resided within this district when the calls were made.

6. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

7. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois.

8. Defendant Cordoba Legal Group LLC ("Cordoba Legal") is a Florida Limited Liability Company with a principal place of business of 102 NE 2nd Street #252 Boca Raton, FL 33432 and a registered agent of Alfredo Cordoba located at the same address.

9. Defendant National Debt Relief LLC ("NDR") is a New York Limited Liability Company with an address of 180 Maiden Lane, 30th Floor, New York, NY, 10038.

10. Defendant Alfredo Cordoba ("Mr. Cordoba") is a Manager of Defendant Cordoba Legal and is located at the same addres as Cordoba Legal.

11. Defendant BC Consulting Group doing business as Paralegal Assistance Center ("BC Consulting"), has a principal place of business of 4613 N University Dr #498 Coral Springs, FL 33067 and has a registered agent of AD Holding Group Foundation.

12. Defendant AD Holding Group Foundation ("AD Holding") is the Manager of Defendant BC Consulting. AD Holding is located at 704 N King St Ste 500, Wilmington, DE 19899.

13. Defendant Owner of 279-247-0137 ("Owner 0137") is a fictitious entity place holder and will be identified during discovery.

14. Defendant Owner of 424-238-3229 ("Owner 3229") is a fictitious entity place holder and will be identified during discovery.

15. Defendants are each a person as defined by 47 U.S.C. § 153(39).

16. Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## STATUTORY BACKGROUND

17. The TCPA makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded voice, or an automatic telephone dialing system, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).

18. The TCPA provides a private cause of action to persons who receive such automated or -pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).

19. The TCPA makes it unlawful to receive more than one telephone call which violates the TCPA regulations "Do Not Call" provisions. *See* 47 C.F.R. § 64.1200(c)(2).

20. The TCPA provides a private cause of action to persons who receive such "Do Not Call" calls. *See* 47 U.S.C. § 227(c)(5)(B).

21. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

    [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

    I*n the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

22. The TCPA applies to the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

23. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

24. When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

25. Under the TCPA, individual party Defendants are personally liable for the acts and omissions alleged in this Complaint.

26. Individual party Defendants in this case directed and oversaw the telemarketing activity in progress, including selecting any third-party affiliate to make the call, exercised control over those affiliates, and any other employees who made the telephone calls.

27. The TCPA requires "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list." 47 C.F.R § 64.1200(d)(1).

## ALLEGATIONS

28. At all times relevant hereto, Plaintiff maintained and used a residential telephone line, with phone number (424) XXX-1582.

29. Plaintiff's phone number is not associated with a business and is used by Plaintiff solely.

30. Plaintiff is the account holder and customary user of his phone number.

31. Plaintiff registered his phone number on the Federal Do Not Call Registry on or around January 18, 2008.

32. Plaintiff registered his phone number on the Do Not Call Registry to obtain solitude from invasive and harassing telemarketing calls. The call prevented Plaintiff from using his phone for legitimate purposes.

33. References to a call from Defendants refers to a call from Defendants, or a call made by its affiliate, partner, or other entity having the authority to market services Defendants sells.

34. Mr. Cordoba owned, operated, and were officers, employees, and/or agents of Cordoba Legal. At all material times referenced herein, Mr. Cordoba participated in the conduct that was directed at Plaintiff. The acts and omissions performed by Cordoba giving rise to liability in this matter occurred, or were performed, or directed at this District.

35. **Call 1.** On or about June 20, 2022, at 2:52 PM Chicago time, Plaintiff received a telephone call from Defendants, from 424-238-3229.

36. When Plaintiff picked up the phone, he heard a beep followed by a longer than natural pause, followed by a "Kate" stating they were providing debt relief and consolidation services, who transferred Plaintiff to a "Joshua" who stated he was with "Debt USA" and "National Debt Relief Center" and provided a website of "NationalDebtRelief.com." Joshua spoke about the program and stated that it would be a program with "Cordoba Legal Group" and provided a website of https://www.cordobalegal.com.

37. Plaintiff asked Joshua what state he was calling from, because the National Debt Relief site stated New York, but the Cordoba Legal website stated Florida. Joshua stated Florida.

38. Plaintiff called the telephone number 424-238-3229 back on June 22, 2022, and an automated system says to the effect of "thank you for calling Loan Solutions Online" and provides options for debt consolidation services.

39. **Call 2.** On or about June 21, 2022, at 4:19 PM Chicago time, Plaintiff received a telephone call from Defendants, from 279-247-0137.

40. When Plaintiff picked up the phone, he heard a longer than natural pause, followed by a "Sam" of "Debt Relief USA" who transferred Plaintiff to a "Licensed Debt Counselor" concerning debt consolidation and resolution services. Sam stated during the call that "This call will override any federal or state do not call list." Following a beep and a warm transfer, Plaintiff was connected to a "Kevin" who asked Plaintiff questions about his debts, credit score, and employment. Kevin asked Plaintiff's state and when asked to provide a website, Kevin provided http://paralegalassistancecenter.com. When asked if he could be emailed further information, Kevin hung up.

41. The above calls were made by Defendants for the purpose of soliciting a service – debt resolution and consolidation services.

42. Despite the contention that "This call overrides any federal or state do not call list," such is not the case, because no consent to call before the call was made existed.

43. Plaintiff, based upon currently available information, alleges Call 1 and Call 2 are related given the similar nature of the script during the call, the manner in which the calls were made, and the verbiage of "Debt USA" and "Debt Relief USA." Both calls also included a "warm transfer" in the telephone calls. Call 1 and 2, even if they came from a different company or promoting different law firms for their debt consolidation and debt resolution

services, likely came from the same lead provider or call center. Defendants worked in concert with one another as part of their telemarketing scheme.

44. On June 22, 2022, Plaintiff e-mailed the e-mail on the website provided during Call 2 requesting to be placed on all internal do not call lists and for a copy of the do not call policy.

45. The conduct alleged in this action was made willful and knowingly, including for reasons such as attempting to evade TCPA liability under the guise of consent to call being provided during the telephone call.

46. Defendants' calls to Plaintiff utilized an automatically generated and/or pre-recorded voice.

47. Defendants' phone call utilized an Automatic Telephone Dialing System (ATDS) without obtaining Plaintiff's prior express written consent.

48. Defendants did not have any consent to call Plaintiff.

49. Defendants are not an organization exempt from the TCPA.

50. Defendants' calls to Plaintiff were a "telephone solicitation" as defined by the TCPA.

51. Defendants' calls to Plaintiff were an "unsolicited advertisement" as defined by the TCPA.

52. Upon information and belief, Plaintiff received additional calls from Defendants and their affiliates not included above.

53. Plaintiff alleges that Defendants train their affiliates to avoid divulging too much information to leads and customers in an effort to evade TCPA liability.

54. Defendants made further efforts to conceal their identity by transmitting a deceptive telephone number with a local area telephone codes to Plaintiff's telephone caller identification ("Neighbor Spoofing"). Neighbor Spoofing is done to deceive the called

party into believing the telemarketer is a local person or business, increasing the likelihood that the telemarketing call will be answered.

55. The impersonal and generic nature of Defendants' call demonstrate that Defendants utilized an Automatic Telephone Dialing System (ATDS) and/or a pre-recorded voice in making the calls.

56. In total, Defendants and/or their affiliates placed at least two (2) telephone solicitation calls to Plaintiff.

57. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy has been invaded by Defendants.

58. Defendants have a pattern and/or practice of failing to comply with the TCPA.

59. The foregoing acts and omissions were in violation of the TCPA.

60. Other Defendants may be named in this case following discovery, including for example any other individuals or entities who directed the unlawful conduct to be made.

61. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the calling has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

62. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages of up to $1,500.00 for each and every call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

63. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

64. Plaintiff seeks injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

65. Plaintiff is also entitled to an award of costs.

66. Defendants' calls were not made for "emergency purposes."

67. Defendants' calls to Plaintiff were made without any prior express written consent.

68. Defendants contacted Plaintiff even though Plaintiff was on the Do Not Call Registry.

69. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

70. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

71. As a result of the above violations of the TCPA, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

72. Plaintiff, in discovery will better identify how many telephone calls were made by Defendants' and or their agents or affiliates, and requests leave to amend the complaint after identifying the instance count.

73. To the extent Defendants, outsourced their illegal robocalling to make the initial telephone call, Defendants are still liable for calls that violate the TCPA.

74. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.
>
> *In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013 FCC Ruling") (internal citations omitted).

75. The May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. At 6587 n. 107.

76. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. At 6593.

77. The May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for

telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id*. at 6586 (¶ 34).

78. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n.107.

79. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

80. Defendants hired, permitted, and enjoyed the benefits of any lead generator and call centers mass robocalling.

81. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." Id. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

82. For the counts identified below, Defendants are directly liable as the party that caused the unlawful calls to be placed.

83. Plaintiff requests a jury trial on all issues so triable.

**COUNT 1.**

Violation of the TCPA's Automated Telemarketing Call Provisions, 47 U.S.C. § 227(b)(1)

84. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

85. Defendants or one of their affiliates or vendors called Plaintiff's cellular telephone using an "automatic telephone dialing system" and/or a pre-recorded voice as defined by the TCPA on at least two (2) occasions in violation of 47 U.S.C. § 227(b)(1), without Plaintiff's prior express written consent.

86. Plaintiff was statutorily damaged at least two (2) times under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 for each.

87. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $3,000.00 plus costs and any other remedy deemed appropriate.

**COUNT 2.**

Initiating A Telephone Solicitation To A Telephone Subscriber Who Has Registered His Number On The Do-Not-Call List At Least 31 Days Prior To The Telephone Call. 47 C.F.R. § 64.1200(C)(2)

88. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

89. Plaintiff's telephone number has been registered on the Federal Do Not Call Registry since at least 30 days prior to the calls described above.

90. Defendants called Plaintiff's telephone at least two (2) times after Plaintiff's telephone had been registered on the Do Not Call Registry for at least 31 days before Defendants' calls, in violation of 47 C.F.R. § 64.1200(c)(2).

91. Plaintiff was statutorily damaged at least two (2) times under 47 U.S.C. § 227(c)(5)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 for each of the two (2) telephone calls.

92. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(c)(5)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $3,000.00 plus costs and any other remedy deemed appropriate.

**COUNT 3.**

Violations of Do Not Call List Policy provisions, 47 C.F.R § 64.1200(d)(1)

93. Plaintiff incorporates the foregoing paragraphs as through the same were set forth at length herein.

94. The TCPA requires "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list." 47 C.F.R § 64.1200(d)(1).

95. Plaintiff requested the policy from Defendants, and, as of transmitting this filing, has not been provided with said policy.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $500.00 plus costs and any other remedy deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against Defendants, jointly and or severally, in an amount to be more fully determined at trial, but at least $6,500.00 as permitted by statute, as follows:

A. All actual damages Plaintiff suffered;

B. Statutory damages of $500.00 per call for each and every violation of 47 U.S.C. § 227(b);

C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C);

D. Statutory damages of $500.00 per call for each and every violation pursuant to 47 U.S.C. § 227(c)(5)(B);

E. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(c)(5)(C);

F. All reasonable attorneys' fees, witness fees, court costs, pre and post-judgment interest, and other litigation costs incurred by Plaintiff;

G. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

H. Statutory damages of $500 per violation of the TCPA's implementing regulations, 47 C.F.R. § 64.1200(d)(1);

I. Leave to amend this Complaint to conform to the evidence presented at trial; and

J. Any other relief this Court deems proper.

Respectfully submitted,

Dated: June 22, 2022

JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582